**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**MARIA POWELL**, on behalf of herself and all others similarly situated,

Plaintiff,

v.

**TEDDY BLAKE, INC.,**

Defendant.

Docket No:

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff **MARIA POWELL**, ("Plaintiff" or "Ms. Powell,") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant TEDDY BLAKE INC. ("Teddy Blake" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.teddyblake.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff **Maria Powell** is a resident of Bronx County and is permanently disabled due to legal blindness. Ms. Powell suffers from advanced proliferative diabetic retinopathy, a severe and progressive retinal disease recognized as one of the leading causes of permanent vision loss in adults. As documented and confirmed by Dr. Ralph Paternoster, O.D., of Park Professional Eyecare, on February 10, 2026, Ms. Powell's visual impairment meets both federal and New York State criteria for legal blindness. Dr. Paternoster further confirms that Ms. Powell's condition is permanent, incurable, and significantly impairs her ability to visually interpret printed or digital

information without assistive technology. Exhibit A

2. Ms. Powell is a proficient user of screen-reading technology and keyboard navigation, which she relies on to access digital environments independently. Because she cannot visually perceive website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Ms. Powell, screen-reading software is not optional; it is the only means by which they can independently access the internet.

3. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web.

4. The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

5. Screen-reading software works by converting digital content into synthesized speech

or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

6. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

7. Plaintiff brings this civil action against Defendant Teddy Blake Inc. for its failure to design, construct, maintain, and operate its highly interactive website, www.teddyblake.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website — and therefore to the goods and services offered therein — constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*.

8. On **March 3, 2026**, **April 7, 2026**, and **May 12, 2026**, Plaintiff attempted to access Defendant's website using screen-reader technology in order to research and purchase handbags offered for sale. Plaintiff specifically sought to purchase (1) a **Vera Croco 14" in Dark Blush** for herself — a structured, full-grain Italian crocodile-embossed leather tote available on the Vera collection page of www.teddyblake.com, priced at $397 (regularly $550); and (2) a **Gigi Suede**

**13" in Light Beige** as a birthday gift for her sister — a handcrafted Italian suede handbag priced at $545 (regularly $675). Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, images, color options, available sizes, pricing, and purchase options for each item before completing a transaction.

9. Despite multiple attempts, Plaintiff was unable to independently complete her objectives due to persistent access barriers. WAVE audits of the exact product pages and collection pages Plaintiff attempted to access revealed **35 errors** and 24 contrast errors on the Vera collection page — including 1 missing alternative text, 1 empty form label, 1 empty button, and **32 empty links** — and **43 errors** and 11 contrast errors on the Gigi Suede 13" product page — including 2 missing alternative texts, 1 empty form label, **4 empty buttons**, **33 empty links**, and 3 empty table headers. These barriers interfered with screen-reader navigation and prevented Plaintiff from obtaining the same product information available to sighted users. Exhibit B

10. The accessibility barriers were pervasive across the pages Plaintiff attempted to use. The Vera collection page — from which Plaintiff sought the Vera Croco 14" Dark Blush — reflected **35 errors** and 77 alerts, with an AIM Accessibility Score of **3.9 out of 10**, including 1 missing alternative text error, 1 empty form label, 1 empty button, and 32 empty links, as well as 24 very-low-contrast errors that rendered text illegible to low-vision users. The Gigi Suede 13" Light Beige product page reflected **43 errors** and 82 alerts, also with an AIM Accessibility Score of **3.9 out of 10**, including 2 missing alternative text errors, 1 empty form label, 4 empty buttons, 33 empty links, and 3 empty table headers — as well as 82 alerts, including a missing select label, 2 orphaned form labels, 1 fieldset missing a legend, and 37 redundant links.

11. Defendant operates a retail e-commerce platform through which consumers can

browse handcrafted Italian leather handbags, review product-specific information including color, material, and size options, and purchase items directly online. Plaintiff specifically sought out Defendant because of its unique positioning as a New York City–based brand offering 100% Italian full-grain leather handbags — handmade in Italy using the same *pelleteries* as major European luxury houses — at prices 70 to 90 percent lower than comparable luxury brands. As a legally blind consumer, Plaintiff relies on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to non-disabled customers.

12. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.teddyblake.com becomes and remains accessible to blind and visually impaired users. Plaintiff remains genuinely interested in purchasing the products offered by Defendant and intends to return to the website as soon as it is remediated so that she may independently browse and obtain information about products for herself and her family. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION & VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*.

14. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

15. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. *See Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); *see also Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

16. Defendant is subject to personal jurisdiction in this District because Teddy Blake Inc. is a New York City–based company with its principal place of business at 401 Broadway, 12th Floor, New York, NY 10013, and it purposefully directs business activities toward New York consumers through its highly interactive e-commerce website, www.teddyblake.com, which allows users to browse handbag collections, review product information, select color and size options, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. *See Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

17. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

18. This Court is empowered to issue declaratory and injunctive relief pursuant to 28

U.S.C. §§ 2201 and 2202.

**THE PARTIES**

19. Plaintiff Maria Powell is, and at all relevant times was, a resident of Bronx County, New York. Ms. Powell is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)--(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist, Ms. Powell suffers from advanced proliferative diabetic retinopathy, a permanent condition that severely restricts her visual acuity and visual fields and requires the use of screen-reading software to access digital content independently.

20. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Powell depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

21. Upon information and belief, Defendant Teddy Blake Inc. is a corporation organized under the laws of the State of Nevada, with its principal place of business at 401 Broadway, 12th Floor, New York, NY 10013. Defendant owns, operates, and controls the commercial website www.teddyblake.com, through which it markets, displays, and sells Italian-crafted luxury handbags to consumers throughout the United States, including residents of New York.

22. Defendant transacts substantial business within the State of New York and within this District by offering its e-commerce goods and services to New York consumers, shipping products directly to New York addresses, and deriving significant revenue from New York-based

transactions. Defendant's website is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7), because it is a service and sales platform offered to the general public.

23. At all relevant times, Defendant was responsible for designing, constructing, maintaining, and operating its website in a manner that complies with federal, state, and local disability-rights laws. Defendant failed to do so, resulting in the denial of full and equal access to Plaintiff and other blind and visually impaired consumers.

24. Ms. Powell is a proficient user of screen-reading technology and keyboard navigation, which she relies on to access digital environments independently. Because she is unable to access visual website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online.

25. Plaintiff brings this civil action against Defendant TEDDY BLAKE INC. for its failure to design, construct, maintain, and operate its highly interactive website, www.teddyblake.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website — and therefore to the goods and services offered therein — constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*.

26. On March 3, 2026, April 7, 2026, and May 12, 2026, Plaintiff attempted to access Defendant's website using screen-reader technology in order to research and purchase handbags offered for sale on the site. Plaintiff specifically sought to purchase (1) a **Vera Croco 14" in Dark Blush** for herself — a structured Italian crocodile-embossed full-grain leather tote, priced at $397 (regularly $550), featured on the Vera collection page; and (2) a **Gigi Suede 13" in Light Beige**

as a birthday gift for her sister — an Italian full-grain suede handbag priced at $545 (regularly $675). Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, images, color and size options, pricing, and related purchase options for each item before completing a transaction.

27. Despite multiple attempts, Plaintiff was unable to independently complete her objectives due to persistent access barriers. The WAVE audits of the exact product pages and collection pages Plaintiff sought to access revealed, among other things, missing alternative text, empty buttons, empty links, empty table headers, empty form labels, orphaned form labels, missing select labels, redundant links, and contrast failures, all of which interfered with screen-reader navigation and prevented Plaintiff from obtaining the same product information available to sighted users.

28. The accessibility barriers were pervasive across the pages Plaintiff attempted to use. The **Vera collection page** — from which Plaintiff sought the Vera Croco 14" Dark Blush — reflected **35 errors** and 77 alerts, including 1 missing alternative text error, 1 empty form label, 1 empty button, and **32 empty links**, as well as 24 very-low-contrast errors. The AIM Accessibility Score was **3.9 out of 10**. The **Gigi Suede 13" Light Beige product page** reflected **43 errors** and 82 alerts, including 2 missing alternative text errors, 1 empty form label, **4 empty buttons**, **33 empty links**, and 3 empty table headers, as well as 11 very-low-contrast errors and 82 alerts including a missing select label, 2 orphaned form labels, 1 fieldset missing a legend, and 37 redundant links. The AIM Accessibility Score was **3.9 out of 10**.

29. Defendant operates a retail e-commerce platform through which consumers can browse handcrafted Italian leather handbags, review product-specific information, and purchase

items directly online. Plaintiff specifically sought out Defendant because of its singular market positioning as a New York City–based luxury handbag brand offering 100% Italian full-grain leather handbags — handmade in Italy at the same *pelleteries* used by major European luxury houses — at prices representing 70 to 90 percent savings compared to traditional luxury brands. The specific designs Plaintiff sought — the Vera Croco 14" Dark Blush and the Gigi Suede 13" Light Beige — are exclusive to Defendant's website and are not available in comparable material, construction, or price from any other retailer. As a legally blind consumer, Plaintiff relies on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to non-disabled customers.

30. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.teddyblake.com becomes and remains accessible to blind and visually impaired users. Plaintiff remains genuinely interested in purchasing the products offered by Defendant and intends to return to the website as soon as it is remediated so that she may independently browse and obtain information about products for herself and her family. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

31. Plaintiff Maria Powell is a legally blind consumer who relies exclusively on screen-reading software and keyboard navigation to access digital content. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Powell depends on businesses to design and maintain their websites in a manner that is compatible with screen-reader technology. When websites are not coded to provide meaningful alternative text, proper ARIA labeling, accessible navigation, and programmatically determinable structure, blind

users are denied the ability to browse, evaluate, and purchase goods independently.

32. Defendant Teddy Blake Inc. owns and operates the commercial website www.teddyblake.com, through which it markets, displays, and sells Italian-crafted luxury handbags to consumers nationwide. Teddy Blake's brand identity is built on its direct-to-consumer model and its mission to deliver 100% Italian full-grain leather handbags — including the Vera and Gigi collections — at prices 70 to 90 percent below those of comparable luxury brands. Defendant brands itself as "TEDDY BLAKE NEW YORK" and positions its products as handmade in Italy using the same materials as high-end luxury brands. Because Teddy Blake sells its handbags exclusively online and directly to consumers, its website is the **only** means by which consumers — including blind consumers such as Plaintiff — can access, evaluate, and purchase its products. For blind consumers who wish to purchase a specific item from Defendant, there is no in-store alternative and no third-party retailer channel; the e-commerce website is the singular point of access.

33. On March 3, 2026, April 7, 2026, and May 12, 2026, Plaintiff attempted to access Defendant's website using NVDA screen-reading software in order to research and purchase two specific handbags: (1) a **Vera Croco 14" in Dark Blush** (regularly $550, on sale for $397), a structured Italian crocodile-embossed full-grain leather tote that Plaintiff chose for her personal use because of its distinctive textured leather, structured silhouette, and color — available exclusively through Defendant and not replicated at comparable quality and price elsewhere; and (2) a **Gigi Suede 13" in Light Beige** (regularly $675, on sale for $545), an Italian full-grain suede handbag that Plaintiff intended as a birthday gift for her sister, who had specifically admired the Gigi Suede design and its neutral colorway. Plaintiff selected these items from Defendant's website — rather than from other online handbag retailers — because Defendant's direct-to-consumer

model offered 100% Italian leather craftsmanship at prices she could not find elsewhere, and because Defendant's "Guaranteed Fit" and 30-day exchange policy provided the purchasing confidence that a blind consumer requires. These items were not available to her in comparable construction, material, and pricing from any other retailer.

34. Plaintiff's shopping objectives were concrete, personal, and time-sensitive. She intended to review the product descriptions, product images, color options, available sizes, pricing, and related purchase options for each item before completing a transaction. However, despite multiple attempts, Plaintiff was unable to independently complete her objectives due to pervasive and persistent access barriers on each of the pages she attempted to use.

35. The WAVE accessibility evaluation of the **Vera collection page** of www.teddyblake.com — the page on which the Vera Croco 14" Dark Blush is listed — revealed **35 errors** and 77 alerts, with an AIM Accessibility Score of **3.9 out of 10**. The errors included 1 missing alternative text, 1 empty form label, 1 empty button, and **32 empty links**. These barriers prevented Plaintiff from accessing essential product information. The 32 empty links — which rendered as completely blank and non-descriptive under NVDA — made it impossible for Plaintiff to determine which link corresponded to which product, which color swatch, or which navigation function. Without meaningful link text, NVDA announced only "link" repeatedly with no context, preventing Plaintiff from locating, identifying, or selecting the Vera Croco 14" Dark Blush or any other product on the collection page. The empty button and missing form label prevented Plaintiff from operating the filter and sort controls necessary to narrow the 24-product collection to the specific item she sought. The 24 very-low-contrast errors further degraded the usability of the page for low-vision users.

36. The WAVE accessibility evaluation of the Gigi Suede 13" Light Beige product page of www.teddyblake.com revealed **43 errors** and 82 alerts, with an AIM Accessibility Score of **3.9 out of 10**. The errors included 2 missing alternative text errors, 1 empty form label, **4 empty buttons**, **33 empty links**, and 3 empty table headers. The 82 alerts included 1 missing select label, 2 orphaned form labels, 1 fieldset missing a legend, and 37 redundant links. These barriers prevented Plaintiff from accessing essential product information about the Gigi Suede 13" Light Beige. The 4 empty buttons — which appeared with no accessible name whatsoever — caused NVDA to announce only "button" with no context, preventing Plaintiff from operating the "Add to Cart" control or any other purchase function. The 2 missing alternative text errors on product images meant that NVDA could provide no description of the bag's suede material, Light Beige color, or silhouette. The 3 empty table headers made the product specification table entirely unintelligible under NVDA. The broken ARIA control references rendered the "Design," "Description," and "Details" expandable sections inaccessible, preventing Plaintiff from reviewing the product's construction details, material specifications, and care instructions before purchasing. The 33 empty links further compounded her inability to navigate among product variants, related items, or proceed to checkout.

37. Across both pages, Plaintiff encountered additional barriers including very low contrast text, redundant links, orphaned form labels, missing select labels, and empty table headers. These barriers collectively prevented Plaintiff from navigating the pages, understanding the structure of the content, accessing product details, and completing a purchase. The barriers were not isolated or technical anomalies; they were systemic and affected every page Plaintiff attempted to use.

38. Defendant's website relies on an accessiBe automated overlay — a third-party

software tool applied as a surface fix to the website's existing code — rather than conformance with WCAG 2.1 through proper accessible coding practices. Defendant maintains **no accessibility statement** on its website and has published no WCAG conformance claim. The accessiBe overlay does not remediate the underlying coding deficiencies identified by WAVE, and its application does not bring Defendant's website into WCAG 2.1 compliance. As a result of these barriers, Plaintiff was denied the full and equal enjoyment of Defendant's website and was unable to purchase the items she specifically sought.

39. Plaintiff remains highly interested in purchasing the Vera Croco 14" Dark Blush and the Gigi Suede 13" Light Beige from Defendant and intends to return to the website as soon as it is made accessible. However, the persistent barriers she encountered deter her from attempting to use the website again until it is remediated. Plaintiff's injury is ongoing because Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility. Pursuant to *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022), Plaintiff's intent to return is not speculative — it is grounded in her specific, documented desire to purchase identified products that remain available on Defendant's website, and her established pattern of attempting to access www.teddyblake.com on multiple occasions.

40. Plaintiff remains highly interested in purchasing luxury handbags from Defendant and intends to return to the website as soon as it is made accessible. However, the persistent barriers she encountered deter her from attempting to use the website again until it is remediated. Plaintiff's injury is ongoing because Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility.

41. Defendant's failure to design, construct, maintain, and operate its website in a manner

compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## NATURE OF ACTION

42. The Internet has become an essential tool for daily life, serving as a primary means of shopping, banking, learning, communicating, and accessing goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in modern society on equal terms. The inability to access digital content independently results in exclusion from the digital marketplace and denies blind consumers the independence and autonomy that sighted users take for granted.

43. Blind and visually impaired individuals access websites using screen-reading software, which converts digital content into synthesized speech or refreshable Braille. This technology is the only method by which blind users can independently navigate the internet. For screen-reading software to function, website content must be capable of being rendered into text. When websites lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references, blind users cannot navigate, understand, or interact with the website.

44. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal

access under the ADA.

45. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. The ADA's protections extend to digital spaces. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

46. Defendant Teddy Blake Inc. owns and operates the commercial website www.teddyblake.com, through which it markets, displays, and sells Italian-crafted luxury handbags to consumers nationwide. Defendant's brand is built on direct-to-consumer access to its exclusive handbag designs — including the Vera and Gigi collections — at prices 70 to 90 percent below comparable luxury brands. Because Defendant sells exclusively through its e-commerce website and has no physical retail stores open to the public, the website is the **only** means by which consumers can access, evaluate, and purchase its products. For blind consumers such as Plaintiff, the inability to access Defendant's website results in complete exclusion from Defendant's goods and services.

47. Plaintiff attempted to access Defendant's website on multiple occasions to research and purchase two specific handbags: a Vera Croco 14" in Dark Blush and a Gigi Suede 13" in Light Beige. These items were uniquely available on Defendant's website in the specific construction, material, and at the specific prices offered. Plaintiff's shopping objectives were concrete, personal, and time-sensitive. However, due to pervasive accessibility barriers on each of the pages she attempted to use, Plaintiff was unable to independently review the product

descriptions, images, color options, pricing, or purchase options necessary to complete a transaction.

48. The WAVE accessibility evaluations of the pages Plaintiff attempted to access revealed significant and widespread accessibility barriers, including 35 errors on the Vera collection page (including 32 empty links and an AIM Score of 3.9/10) and 43 errors on the Gigi Suede 13" product page (including 4 empty buttons, 33 empty links, 3 empty table headers, and an AIM Score of 3.9/10). These barriers prevented Plaintiff from accessing essential product information and from completing her intended purchases.

49. Defendant's failure to design, construct, maintain, and operate its website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

50. Plaintiff brings this action to enforce her civil rights and to secure injunctive relief requiring Defendant to adopt and implement policies, practices, and procedures that will ensure that its website becomes and remains accessible to blind and visually impaired individuals. Plaintiff remains highly interested in purchasing handbags from Defendant and intends to return to the website as soon as it is made accessible. Without remediation, Plaintiff and other blind consumers will continue to be excluded from equal participation in Defendant's online marketplace.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of all legally blind individuals in the United States

who have attempted to access Defendant's website and, as a result of Defendant's failure to design and maintain the website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

52. Plaintiff also seeks certification of a New York subclass consisting of all legally blind individuals residing in the State of New York who have attempted to access Defendant's website and were denied equal access to the goods, services, and information offered thereon.

53. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff but is believed to be in the thousands, given the size of the blind and visually impaired population and the widespread use of Defendant's website.

54. Common questions of law and fact exist among the Class and Subclass, including but not limited to: (a) whether Defendant's website is a "public accommodation" under Title III of the ADA; (b) whether Defendant's website denies blind and visually impaired individuals full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations; (c) whether Defendant's failure to comply with WCAG 2.1 constitutes a denial of equal access; (d) whether Defendant has failed to adopt policies and practices reasonably calculated to ensure ongoing accessibility; and (e) whether injunctive relief is warranted to require Defendant to make its website accessible.

55. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, attempted to access Defendant's website, encountered access barriers, and was denied equal access to Defendant's goods and services.

56. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in disability rights litigation, class actions, and

website accessibility cases. Plaintiff has no interests antagonistic to the Class.

57. Defendant has acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole under Rule 23(b)(2).

58. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

59. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. §12182 *et seq.***
*(Violations of the ADA, 42 U.S.C. § 12182 et seq.)*

60. Plaintiff, **MARIA POWELL**, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

62. Defendant's Website, www.teddyblake.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading

technology.

63. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

64. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

65. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.teddyblake.com, has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and

equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

66. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

67. Plaintiff, MARIA POWELL, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

68. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

69. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

70. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.teddyblake.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

71. Plaintiff has visited the Website, www.teddyblake.com, on a number of occasions and has encountered barriers to her access that exist.

72. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

73. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

74. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

75. The Defendant's discriminatory practice also includes, "a refusal to take such steps

as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

76. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

77. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

78. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

79. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*.

80. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

81. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access

barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

82. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

83. Plaintiff, MARIA POWELL, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

84. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

85. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

86. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

87. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological

conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

88. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.teddyblake.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

89. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

90. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

91. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*

92. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*.

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

93. Plaintiff, **MARIA POWELL.** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

94. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

95. Defendant is subject to NYCHRL because it owns and operates the Website, www.teddyblake.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

96. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

97. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

98. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-

107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

99. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

100. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

101. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

102. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

103. Plaintiff is also entitled to reasonable attorneys' fees and costs.

104. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

105. Plaintiff, **MARIA POWELL**, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

106. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

107. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 *et seq.*;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.teddyblake.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;

- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;
- Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under the New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;
- Pre-judgment and post-judgment interest;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 29, 2026

Respectfully submitted,
JOSEPH & NORINSBERG, LLC
By: *<u>/s/ Robert L. Schonfeld</u>*

**Robert Schonfeld, Esq.**
**Jon Norinsberg, Esq.**
825 Third Avenue, Suite 2100
New York, New York 10022
(212)227-5700
rschonfeld@employeejustice.com
Counsel for Plaintiff